(No. 3053—

THE COUNTY OF COOK, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed April 9, 1941.*

THOMAS J. COURTNEY, for claimant.

GEORGE F. BARRETT, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

In its complaint, the County of Cook, through its State's Attorney, claims the sum of $97,889.00 from the State on the

grounds that it is a county by virtue of "An Act to revise the law in relation to counties," approved and in force March 31, 1874, Revised Statutes of 1874, page 302, and that under the law of Illinois, it was claimant's duty to furnish relief to mothers residing therein in the nature of mothers' pensions, in accordance with Sections 350 to 369, both inclusive, of Chapter 23, "Charities" of the Illinois State Bar Statutes for 1935; that Cook County furnished relief and paid out to various persons entitled thereto as and for mothers' pensions for a period from January 1st, 1933 to June 30, 1933, the moneys in question. It is further alleged that in accordance with Section 366 (1) of Chapter 23 of the Illinois State Bar Statutes for 1935, it became and was the obligation of the General Assembly of the State of Illinois to appropriate to the Department of Public Welfare money to be paid to counties giving relief under the provisions of the Act; that money was appropriated by the legislature to the respondent for that purpose. The complaint further alleges that of said sum of money so appropriated by the General Assembly, the County of Cook became and was entitled to an amount of $48,139.00 from the equalization fund and $49,750.00 from the general fund appropriated to Public Welfare, making a total of $97,889.00. It is further charged that this last sum of money, under and by virtue of the provisions of the Act, became and was payable to the claimant for relief given by the claimant for the period from January 1st, 1933 to June 30, 1933, on the ground that claimant had met the standards of administration set out by the Department of Public Welfare, and that each and every thing necessary to be done by the claimant to entitle it to said fund had been done, except that during the period above set out, the claimant was operating under financial stress due to an unprecedented failure of tax collections; that the payrolls of the employees of the claimant and bills for services rendered and materials furnished to claimant were not met or paid promptly and in many instances were delayed for a period of as much as eight months.

It is further charged that during that period mothers' pension checks payable to pensioners from that fund were likewise delayed, and in some cases were not given out until several months after the period for which the pension check was payable; that the checks were distributed and paid out

for that period after that period, in accordance with pay-rolls submitted by the claimant to the Department of Public Welfare, to which payrolls the claimant asked the State of Illinois to look for verification.

It is also charged that due to this delay the amount of money appropriated by the General Assembly as to the pro-portionate share of the claimant of said total appropriation was not claimed by the claimant herein until such a time as the above proportionate share was transferred back by the respondent from the fund for mothers' relief pension to the general fund of the respondent. Claimant further states that it was informed by the respondent, through its Department of Public Welfare, that this claim must be filed with this court.

A stipulation of facts was entered into which provided as follows:

"The 57th General Assembly of the State of Illinois appropriated to the Department of Public Welfare of the State of Illinois the sum of $1,000,000.00 for the 1931-1933 biennial to be paid to counties giving relief to mothers under the provisions of an Act entitled "An Act to provide for the partial support of mothers, and for the probationary visitation, care and supervision of the family for whose benefit such support is provided," approved June 30, 1913, as amended. (Stipulation, pages 1 and 2.

"Thereafter, pursuant to said statute, the Department of Public Welfare, from said appropriation, apportioned and allocated to the County of Cook, claimant, for the period between January 1, 1933 and June 30, 1933, the sum of $97,889.00. ($48,139.00 from the Equalization Fund and $49,750.00 from the General Fund.) (Stipulation, page 2, paragraph 3.)

"In conformity with the standards of administration set by the Depart-ment of Public Welfare, the County of Cook gave relief to mothers under the said statute for the period from January 1, 1933 to June 30, 1933, in the sum of $485,697.50, but did not make such payments until after September 30, 1933, due to the inability of the County of Cook to collect taxes due it. (Stipulation, page 2, paragraphs 4 and 5.)

"In December, 1933, itemized statements of the moneys paid out by the County of Cook under said statute were certified to the State Department of Public Welfare for the quarter commencing January 1, 1933 and ending March 30, 1933, and for the quarter commencing April 1, 1933, and ending June 30, 1933; said statements show a total expenditure of $485,697.50 by the County of Cook for the period from January 1, 1933 to June 30, 1933; the said statements meet all the requirements of the State Department of Public Welfare. (Stipulation, page 2, paragraph 6.)

"On September 30, 1933, the appropriation to the State Department of Public Welfare lapsed, and on that date there was remaining in the said appropriation an unexpended balance of $166,001.09. (Stipulation, page 3, paragraph 7.)

"The amounts allocated to the claimant under the provisions of the above statute for the quarters ending March 30, 1933, and June 30, 1933, (i. e., the period from June 1, 1933, to June 30, 1933) did not exceed fifty

per cent. of the expenditures of the County of Cook for each quarter respectively; and the total amount allocated to the County of Cook for the period from January 1, 1933, to June 30, 1933, did not exceed fifty per cent. of the total amount expended by the County of Cook for said period. (Stipulation, page 3, paragraph 8.)

"No warrant was, or has been, issued to the County of Cook, and no payment has been made to the County of Cook of the said sum of $97,889.00, or of any part thereof. (Stipulation, page 3, paragraph 9.)

The pertinent provisions in the Act of 1913, as amended, found in Section 16a thereof (Chap. 23, Sec. 338a, Illinois Revised Statutes, are as follows:

"The County Treasurer * * * shall certify to the Department of Public Welfare an itemized statement * * * of the money paid out in accordance with the provisions of this act during each quarter" etc.

We construe the word "during" as used in this connection, to mean "for". From the stipulation of facts it would appear that the County of Cook had done all that it was required to do, and but for the financial stress prevailing, the County of Cook would have collected its taxes, paid the mothers' pensions in the normal course, and applied for and received contributions from the State before the lapse of the appropriation; that pursuant to the statute, the State Department of Public Welfare allocated to the county of Cook the sum of $97,889.00, and it was through no fault of anyone that the payment was not made prior to the lapse of the appropriation.

The Attorney General does not dispute nor deny this claim, and pursuant to the stipulation entered herein, and because the County of Cook had done all that it was required to do, an award is recommended to the Legislature in the sum of Ninety-seven Thousand Eight Hundred Eighty-nine Dollars ($97,889.00) in favor of the County of Cook, to repay to it a sum it was justly entitled to.